COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Humphreys and Senior Judge Hodges
Argued at Chesapeake, Virginia


IN THE MATTER OF SANCTIONS
 IMPOSED AGAINST
 DIANE FENER, ESQ. [1]

                                                    MEMORANDUM OPINION[*]  BY
          Record No. 0588-03-1                      JUDGE ROBERT J. HUMPHREYS
                                                    NOVEMBER 18, 2003



                   FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                              John E. Clarkson, Judge Designate

              Robert Jeffries (Law Offices of Diane Fener, P.C., on briefs), for
              Diane Fener.

              Cheryl Footman-Banks, Guardian *ad litem* for the minor children.


        Diane Fener appeals an order of the circuit court, sanctioning her for her conduct while

acting as counsel for Jayson L. King, Sr., during a child custody matter in the Juvenile and

Domestic Relations District Court of the City of Chesapeake.  Fener contends the circuit court

erred in ordering the sanctions for the following reasons: 1) the circuit court failed to provide

_____

        [1] This appeal concerns an order of sanctions imposed against Diane Fener.  The sanctions
were imposed against Fener by the Juvenile and Domestic Relations District Court of the City of
Chesapeake in relation to her representation of Jayson King in a custody matter wherein King
sought custody of his minor children.  At the time of the proceedings at issue, King's children
were in the custody of their maternal grandmother, Cheryl Sawyer.  Cheryl Footman-Banks was
appointed Guardian *ad litem* for the minor children.  Thus, the custody proceeding from which
the matter of sanctions arose, was styled <u>Jayson King v. Cheryl Sawyer</u>.  On appeal to this Court
on the issue of sanctions, however, the parties styled the matter <u>Diane Fener v. Cheryl Sawyer</u>.
We style the matter as it is styled in the final order of the Circuit Court of the City of
Chesapeake.

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.  Further,
because this opinion has no precedential value, we recite only those facts essential to our
holding.

Fener with a *de novo* review on her appeal of the original sanction order, entered by the juvenile and domestic relations district court (juvenile court); 2) the circuit court improperly considered evidence of alleged misrepresentations made by Fener during the juvenile court proceedings; 3) the evidence presented during the circuit court proceeding was insufficient, as a matter of law, to establish Fener made a misrepresentation to the court during the juvenile court proceeding; and 4) the evidence presented during the circuit court proceeding was insufficient, as a matter of law, to establish a "factual basis for any monetary award made." For the reasons that follow, we reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

"On appeal, we review the evidence in the light most favorable to the party prevailing below, together with all reasonable inferences that may be drawn." Benton v. Commonwealth, 40 Va. App. 136, 139, 578 S.E.2d 74, 75 (2003).

So viewed, the evidence presented below established that on or about October 10, 2002, Cheryl Footman-Banks was the guardian *ad litem* (GAL) for the children of Jayson King, in relation to a custody matter before the juvenile court. Banks, in her capacity as GAL, filed a motion for sanctions against Fener, counsel for "Georgia King and Jayson L. King, Sr."[2] In the motion, the GAL alleged that, during an earlier proceeding, which took place on August 30, 2002 before "Judge Leftwich," Fener acted

> inappropriately by trying to have [her] removed from the case by instructing one of her clients, Georgia King, to file a frivolous bar complaint against [her]. Attorney Fener made a previous request to Judge Leftwich, Substitute Judge, for [the judge] to have [her] removed as guardian ad litem. He refused to remove [her]. She then argued to Judge Leftwich that she is going to have her client file a bar complaint against [her].

---

[2] The record reflects that Georgia King is King's mother, the children's paternal grandmother.

The motion further alleged that Fener had proffered that a false emergency existed requiring removal of the children from their current placement in the maternal grandmother's home; that Fener attempted to circumvent the judge's order requiring home studies to be performed, by asking a substitute judge to hear the matter; and that Fener falsely accused the GAL of "preventing Ms. King from testifying before this court."

After hearing evidence related to this motion, on October 11, 2002, Judge Rufus A. Banks, Jr. found that, during the earlier August 30, 2002 proceeding, Fener had "urged" Georgia King to file a bar complaint against the GAL. The court's written notes further stated:

> Hearing before Judge Leftwich Fener [sic] indicated gun incident should have caused removal of [children]. Fener [with]drew b/c no gun incident. Ms. Fener [requested] hearing anyway [without] home study. Ms. Fener requested removal of GAL. Ms. Fener told her client to file bar complaint. Ms. Fener created frivilous [sic] bar complaint. In complaint, Ms. King alluded to the fact that GAL prevented her from testifying [and] Judge refused to hear from her [because] of GAL. GAL interviewed [children] and found no emergency. Ms. Fener [attempted] to have case moved up. Ms. Fener made arguments on behalf of her client and other party. Ms. Fener's conduct = improper. Best [interests] should control. No final recommendations made.
>
> Fener: Georgia King not her client. F [sic] Jayson King is filing = nonfrivilous [sic] as she sees it. [Mother and Father] married. Didn't direct anyone to file bar complaint. People unhappy [with] GAL. GAL didn't [return] her calls. Only thing she said = Complaint to bar . . . apparent conflict. Complaint filed prior.

Accordingly, the court ordered Fener to pay sanctions in the amount of $250 to the court and $750 to the GAL, "upon consideration of the act of frivolous, baseless claims and misrepresentations before this bench . . . ."[3] Fener appealed this judgment and the sanctions imposed to the circuit court.

---

[3] The record reflects that Georgia King filed a complaint against the GAL with the Virginia State Bar sometime after the August 30, 2002 proceeding in juvenile court, but prior to the October 11, 2002 proceeding. The complaint was still pending at the time of the circuit court proceeding at issue in this appeal.

During the *de novo* hearing in circuit court, the GAL testified that she was appointed as GAL "in the case of the King children." She testified that Fener filed a motion requiring the GAL's appearance in court on October 11, 2002. In her motion, Fener alleged, in relevant part, that the GAL had a conflict "because [Fener's] clients had filed a bar complaint against [her]." The GAL also testified that, during the October 11, 2002 proceeding, the juvenile court judge asked Fener if she instructed her client to file a bar complaint against the GAL and that Fener replied, "No."

The GAL further testified, without objection, that the juvenile court judge called Deputy Milford Earl Deaver, of the Chesapeake Sheriff's office, as a witness and asked him whether Fener had advised her clients, during an earlier court appearance on August 30, 2002, to file a bar complaint against the GAL. According to the GAL, Deputy Deaver, who was present in the courtroom during the earlier court appearance, confirmed that Fener had instructed her client to file a complaint against the GAL. The GAL testified that in light of this testimony, as well as that of Cheryl Sawyer, the maternal grandmother of the children, who was also present during the earlier court proceeding, the juvenile court judge "sanctioned [Fener] for being dishonest with the court."

Deputy Deaver testified in circuit court that he was present during the August 30, 2002 juvenile court proceeding. He stated that during the August 30 proceeding, he recalled hearing Fener argue that the GAL should be removed, and the judge denied the motion. He testified that Fener then said "I'll have my clients contact the bar." When the judge asked Fener if he had heard her correctly, Fener said "Oh, I didn't say that, Judge. I didn't say that. I would never say that . . . ," "and tried to change what she had said." Deaver further stated that he testified to this information during the October 11, 2002 proceeding.

Sawyer testified that she was also present in the courtroom during the August 30 and October 11, 2002 proceedings. During the August 30 proceeding, she heard Fener say that "she was going to instruct her clients to file a bar complaint against [the GAL]." Sawyer stated that she testified to this during the October 11 proceeding. In addition, she testified that, during the October 11 proceeding, she heard Fener deny that she had made this statement after being questioned by the judge.

Fener testified that during the August 30, 2002 proceeding, she informed Judge Leftwich "that two of the petitioners had complaints about the way the [GAL] was refusing to take their calls, was not listening – to their evidence, was accepting the other side's evidence to the exclusion of theirs . . . ." Fener testified that Judge Leftwich then asked her if "there [was] a bar complaint," "is there a letter?" and that "once [Judge Leftwich] heard there was not an actual bar complaint, he didn't want to entertain any further discussion." Fener testified that in response, "in a very exasperated . . . tone – [she] said – [she] couldn't get anything heard. [She] said, [']I'll tell them that they have to write a letter, or they have to bring a letter.[']"

Fener testified that during the October 11, 2002 proceeding, Judge Banks was "very concerned that [she] had filed a frivolous bar complaint in order to unseat the [GAL]." She conceded that Judge Banks asked her whether she had advised her clients to file a bar complaint. Fener further conceded that she responded, "No," but testified that she merely advised "them" that they could file a complaint, and how to go about doing so. [4]

Georgia King testified that she "wanted a resolution," that she was frustrated with the GAL and had asked Fener for "help." She also testified she told Fener she "needed to contact someone" and that Fener had told her she could contact the bar.

_____

[4] Fener consistently referred to her client as "clients" throughout the record, on several occasions referring to "them." However, Fener contended that she represented only Jayson King and was not the "attorney of record" for Georgia King.

After hearing this evidence, the circuit court held:

> Now, I'll tell you, quite frankly, if someone lied to the court – if someone lied to the court – it's a most serious matter. It's something that I think you could lose your license over. It's that serious.
>
> Now, I'm not here to determine whether you lied to the court. I'm here to determine whether or not the judge was correct in giving sanctions, and I feel from the evidence presented by the three witnesses that the judge was correct in the granting of sanctions. I find that as a fact you either told the judge or indicated to the judge so he understood – and his notes so reveal. The notes of Judge Banks reveal that – let me find it here – Fener took – and I'm quoting in part. Mrs. Fener told her client to file a bar complaint.
>
> In essence, that's what was told to me by three witnesses; and I'm inclined to agree with all those three witnesses that that was what was said. So, therefore, your notice of appeal is denied; and I'm going to enter a judgment following the order of Rufus A. Banks, Jr., Judge . . . .

The circuit court's written order, dated January 30, 2003, stated, "the appeal from the Juvenile and Domestic Relations District Court is denied – Diane Fener, by counsel, noted her objection thereto."

Fener made no motion to strike during the circuit court proceeding, but filed a motion to reconsider the order. In her motion, Fener argued that the GAL failed to "adduce" any evidence during the hearing of the three grounds for sanctions alleged in the initial motion and that the circuit court improperly treated the matter as an appeal from a finding of contempt, as opposed to an appeal of sanctions entered pursuant to Code § 8.01-271.1.

After a hearing on Fener's motion to reconsider, the circuit court denied it, finding that it did not "find [Fener] in contempt," but that the parties were "[there] on sanctions." The court further stated, "I find that Judge Banks, general district court judge [sic], did not abuse his discretion in granting sanctions . . . ."

- 6 -

II. ANALYSIS

Fener argues that the circuit court erred by: 1) allowing the GAL to "proceed on grounds different from those stated in the motion"; 2) failing to "disregard the proceedings in, and findings of, the District Court"; and 3) "receiv[ing] evidence regarding, and rely[ing] upon [the GAL's] characterization of the basis for, the District Court's order." In the alternative, Fener contends the evidence presented was insufficient, as a matter of law, to prove that she made any misrepresentations before the court, and/or to establish a "factual basis" for the "monetary award" that was ordered.[5] Because we find that the record reflects the circuit court failed to consider this matter *de novo*, we reverse and remand for further proceedings consistent with this opinion.

A.

We begin our analysis by first recognizing that although the juvenile court, the circuit court, and the parties have not identified the authority under which the sanctions in this matter were ordered, a court clearly has the authority, under Code § 8.01-271.1, "to impose attorney's fees and reasonable costs as a sanction for a frivolous motion made for an 'improper purpose.'" Vokes v. Vokes, 28 Va. App. 349, 358, 504 S.E.2d 865, 870 (1998) (quoting Code § 8.01-271.1). The statute specifically includes motions made "to harass or to cause unnecessary delay or

---

[5] Although Fener states in the "Questions Presented" portion of her brief on appeal that the circuit court erred in ordering the sanctions because "the moving party must show a factual basis for any monetary award made," Fener includes no argument or authority on this issue in her brief. Accordingly, we do not consider it further. See Rule 5A:20(e) (requiring the appellant's brief to include, among other things, "principles of law, the argument, and the authorities relating to each question presented"); see also Thomas v. Commonwealth, 38 Va. App. 319, 321 n.1, 563 S.E.2d 406, 407 n.1 (2002); Dickerson v. Commonwealth, 36 Va. App. 8, 15, 548 S.E.2d 230, 234 (2001); Bennett v. Commonwealth, 35 Va. App. 442, 452, 546 S.E.2d 209, 213 (2001); Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

needless increase in the cost of litigation." Code § 8.01-271.1.[6] "Courts often impose sanctions when a litigant or his attorney has acted in bad faith." Gentry v. Toyota Motor Corp., 252 Va. 30, 34, 471 S.E.2d 485, 488 (1996). "[S]anctions [also] can be used to protect courts against those who would abuse the judicial process." Oxenham v. Johnson, 241 Va. 281, 286, 402 S.E.2d 1, 3 (1991). "The purpose of such a sanction is to punish the offending party and deter others from acting similarly." Gentry, 252 Va. at 34, 471 S.E.2d at 488. Moreover,

---

[6] Code § 8.01-271.1 provides as follows, in relevant part:

Every pleading, written motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record . . . .

The signature of an attorney or party constitutes a certificate by him that (i) he has read the pleading, motion, or other paper, (ii) to the best of his knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . .

An oral motion made by an attorney or party in any court of the Commonwealth constitutes a representation by him that (i) to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and (ii) it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

If a pleading, motion, or other paper is signed or made in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed the paper or made the motion, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including a reasonable attorney's fee.

- 8 -

> [i]t has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." United States v. Hudson, [11 U.S. 32, 34] (1812); see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980) (citing Hudson[, 11 U.S. at 34]). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Anderson v. Dunn, [19 U.S. 204, 227] (1821); see also Ex parte Robinson, [86 U.S. 505, 510] (1874). These powers are "governed not by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630-[31] (1962).

Chambers v. Nasco, Inc., 501 U.S. 32, 43 (1991).

Whatever the basis for the sanctions we generally apply an abuse-of-discretion standard in reviewing a trial court's award or denial of a sanction. Oxenham, 241 Va. at 287, 402 S.E.2d at 4. "[A] trial court 'by definition abuses its discretion when it makes an error of law.'" Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)).

Because this sanction was initially imposed by the juvenile court, in the context of a child custody proceeding, the right of appeal from the juvenile court to the circuit court was governed by Code § 16.1-296. See Walker v. Dept. of Public Welfare, 223 Va. 557, 562, 290 S.E.2d 887, 890 (1982); Richardson v. Commonwealth, 28 Va. App. 389, 392-93, 504 S.E.2d 884, 886 (1998). Code § 16.1-296(A) provides, in relevant part:

> From *any* final order or judgment of the juvenile court affecting the rights or interests of *any person* coming within its jurisdiction, an appeal may be taken within ten days from the entry of a final judgment, order or conviction.

(Emphases added).

The parties do not dispute that the juvenile court's order of sanctions was final for purposes of appeal. Nor do the parties dispute that Fener fell within the juvenile court's

jurisdiction while acting as an officer of the court and representing a party in a proceeding before that court. Thus, it is clear that, pursuant to Code § 16.1-296, the appeal to the circuit court from the juvenile court must be heard *de novo* by the circuit court. Code § 16.1-136; see also Walker, 223 Va. at 562-63, 290 S.E.2d at 890 (holding that because the only provision set forth in Chapter 11 of Title 16.1 of the Code relating to appeals from the juvenile court to the circuit court cross-references Code § 16.1-136, which requires *de novo* review in certain criminal matters, appeals pursuant to Code § 16.1-296 must be heard *de novo*); Fairfax County v. D.N. and S.N., 29 Va. App. 400, 406, 512 S.E.2d 830, 832 (1999).

The Supreme Court of Virginia has repeatedly held that appeals to a circuit court from a court not of record, "under Code § 16.1-136, annul[] the judgment of the inferior tribunal as completely as if there had been no previous trial, and that such a trial *de novo* in the circuit court grants to a litigant every advantage which would have been his had the case been tried originally in such court." Walker, 223 Va. at 562-63, 290 S.E.2d at 890 (citations omitted). "A court which hears a case *de novo*, which disregards the judgment of the court below, which hears evidence anew and new evidence, and which makes final disposition of the case, acts not as a court of appeals but as one exercising original jurisdiction." Thomas Gemmell, Inc. v. Svea Fire & Life Ins. Co., 166 Va. 95, 98, 184 S.E. 457, 458 (1936). Thus,

> "[w]hen an appeal is taken by either party, its effect is not only to suspend but to destroy the effect of a judgment of a justice. It makes it as though no judgment had been rendered. The cause is considered as still pending, no regard is had to the judgment of the justice, and the rights of the parties are the same as they would be in any other suit pending in the courts of record."

Id. at 99, 184 S.E.2d 458 (quoting Turner v. Northcut & McCarty, 9 Mo. 251, 256 (1845)).

Although the record here reflects that the circuit court afforded the parties an opportunity to plead their case anew and present evidence accordingly, the record further reflects that the circuit court failed to "disregard" the judgment of the juvenile court in rendering its own

judgment. Indeed, the oral record of the circuit court's decision, in conjunction with its written order of January 3, 2003 and its oral decision on Fener's motion to reconsider, demonstrates that the circuit court merely "denied" Fener's "appeal" and "followed the order" entered by the juvenile court. Although the court found the evidence sufficient to establish Fener "told her client to file a bar complaint," the court made no factual findings, offered no independent basis for its determination that Fener committed sanctionable conduct, offered no independent basis for its determination of the appropriate sanction, and rendered no independent final judgment based upon these factors.

Thus, the action of the circuit court in "deny[ing] the appeal," while consistent with a judgment of an appellate court acting upon a review of the record below, was inconsistent with the duty of a trial court to render a new and inherently independent judgment upon the evidence presented to it. Accordingly, we find the circuit court abused its discretion in ruling in this manner, and reverse its decision and remand for further proceedings consistent with this opinion.

B.

Because we find fault only with the circuit court's failure to rule solely from the evidence before it and to enter final judgment based thereon, we address Fener's remaining contentions on appeal. Specifically, her arguments that the circuit court: 1) erred in allowing the GAL to proceed on grounds different than those stated in the GAL's written motion for sanctions; 2) erred in receiv[ing] evidence regarding, and rely[ing] on [the GAL's] characterization of the basis for the District Court's order"; and 3) erred in finding the evidence sufficient to establish Fener made misrepresentations before the court.

With regard to Fener's first argument, that "[t]he claim of a misrepresentation to the court does not appear anywhere in the notice," we note that "[p]rocedural due process [indeed] guarantees that a person shall have reasonable notice and opportunity to be heard before any

binding order can be made affecting the person's rights to liberty or property." McManama v. Plunk, 250 Va. 27, 34, 458 S.E.2d 759, 763 (1995). Here, although it is true that the allegations against Fener concerning the misrepresentations pertaining to the bar complaint were not set forth within the GAL's initial written motion, several other allegations concerning Fener's honesty and candor before the tribunal were raised. Specifically, allegations that Fener proffered a "fals[e]" emergency for purposes of removing the children from Sawyer's home and "fals[ely]" represented that the GAL had prevented Georgia King from testifying on an earlier occasion. Moreover, the juvenile court explicitly held that Fener committed sanctionable conduct that specifically included "misrepresentations before [the] bench." The record reflects that one such "misrepresentation" of concern to the juvenile court, took place before that court during the October 11, 2002 hearing on the GAL's motion for sanctions. Specifically, Fener's denial that she had advised her client, during the August 30, 2002 proceeding, to file a bar complaint against the GAL.

Thus, Fener was explicitly placed on notice of the various claims of misrepresentation prior to the circuit court hearing. Although the circuit court, on trial *de novo*, was bound to ignore the juvenile court's judgment, the circuit court was not bound to ignore the evidence of Fener's conduct during that proceeding. See Gemmell, Inc., 166 Va. at 99, 184 S.E. at 458. Indeed, contrary to Fener's claim on appeal, there is simply no basis in law to support Fener's claim that her *de novo* appeal of the juvenile court's judgment effectively erased her conduct before the juvenile court. Moreover, Fener was given the opportunity to present evidence on the relevant issues during the circuit court hearing. In light of this fact, Fener has demonstrated no prejudice based upon this alleged "variance." See Chesterfield Meadows Shopping Center v. Smith, 264 Va. 350, 356, 568 S.E.2d 676, 680 (2002) (finding that although the facts pled varied from the facts proved, where the facts pled supported the legal theory for the judgment sought or

rendered, no error occurred in a judgment based upon the "more limited view of the facts actually proved"). Accordingly, we find no error in the circuit court's consideration of this claim and/or the related evidence.

We likewise find no merit in Fener's next contention, that the circuit court improperly considered the GAL's testimony concerning the juvenile court proceedings. As stated above, in a proceeding *de novo* it is only the "judgment" of the lower court that "must be ignored." See Baugh v. Commonwealth, 14 Va. App. 368, 373, 417 S.E.2d 891, 894 (1992) (citing Gravely v. Deeds, 185 Va. 662, 664, 40 S.E.2d 175, 176 (1946); Royals v. City of Hampton, 201 Va. 552, 556, 111 S.E.2d 795, 798 (1960)).

In addition, "[e]vidence is generally admissible if it is both relevant and material." Mueller v. Commonwealth, 15 Va. App. 649, 655, 426 S.E.2d 339, 343 (1993); see also Harrell v. Woodson, 233 Va. 117, 122, 353 S.E.2d 770, 773 (1987) ("Every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is relevant, and if otherwise admissible, should be admitted."). Determining "[t]he admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). As the evidence at issue largely concerned whether Fener misrepresented facts before the juvenile court, we find no abuse of discretion on the part of the circuit court in admitting such evidence.

Finally, we do not consider Fener's contention that the evidence presented was insufficient, as a matter of law, to establish she made the alleged misrepresentations. Assuming without deciding that Fener's closing argument was sufficient to preserve this issue for appeal, we point out that the circuit court here made no finding concerning the alleged misrepresentations, stating "I'm not here to determine whether you lied to the court." We cannot

review a finding on appeal which was not made below. See Fisher v. Commonwealth, 16 Va. App. 447, 454, 431 S.E.2d 886, 890 (1993); see also Fisher v. Commonwealth, 236 Va. 403, 414, 374 S.E.2d 46, 52 (1988), cert. denied, 490 U.S. 1028 (1989); Taylor v. Commonwealth, 208 Va. 316, 324, 157 S.E.2d 185, 191 (1967); Hogan v. Commonwealth, 5 Va. App. 36, 44, 360 S.E.2d 371, 376 (1987).

For the foregoing reasons, the circuit court's judgment is hereby reversed and the case remanded to the circuit court for further proceedings consistent with this opinion. Furthermore, considering the circumstances of this case, we deny the GAL's request for "costs" on appeal. See Gayler v. Gayler, 20 Va. App. 83, 87, 455 S.E.2d 278, 280 (1995) (denying request for appellate attorney's fees where husband had reasonable grounds for appeal).

Reversed and remanded.