Present:  All the Justices

IRIS GENTRY, ETC., ET AL.

OPINION BY JUSTICE ROSCOE B. STEPHENSON, JR.

v.  Record No. 951640

June 7, 1996

TOYOTA MOTOR CORPORATION, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James F. Ingram, Judge

The issue in this appeal is whether the trial court erred in dismissing this action for spoliation of evidence.

On May 17, 1991, Iris Gentry was rendered paraplegic when she lost control of her 1987 Toyota pickup truck and crashed into a ravine in Eden, North Carolina.  Although Iris has amnesia as to the events surrounding the accident, an eyewitness testified that the truck's engine had been racing prior to the accident. The witness stated that, when Iris shifted gears, the engine "went wide open," and the truck "accelerated . . . started fishtailing" and went off the road.

Iris's attorney employed William Rosenbluth, a purported expert on the sudden acceleration of vehicles, to determine what could have caused the engine to race.  Rosenbluth inspected the truck and concluded that a temperature control cable impinged on the accelerator pedal rod and caused the sudden acceleration. Rosenbluth then, without authorization or permission from anyone, removed the temperature control cable by using a hacksaw on the truck's instrument panel.  He also removed the accelerator pedal rod.

Thereafter, the Gentrys[1] sued Toyota Motor Corporation

---

[1] During the pendency of this action, the Gentrys divorced, and Iris changed her name to Arrington.

(Toyota Japan), Toyota Motor Sales, USA, Inc. (Toyota USA), and Danville Toyota, Inc. (Danville Toyota) (collectively, Toyota), seeking $10,000,000 in damages for bodily injuries sustained by Iris while operating an allegedly defective 1987 Toyota pickup truck. The Gentrys' action was based upon theories of negligence, breach of implied warranties, and strict liability. They alleged that Toyota Japan and/or Toyota USA were negligent in the design, manufacture, and testing of the truck and in failing to warn them of the truck's dangerous and defective condition. The Gentrys also alleged that Danville Toyota was negligent in selling the truck to them in a defective condition, in failing to inspect the truck, and in failing to warn them of the defect.

Based upon answers to interrogatories and Rosenbluth's deposition, Toyota moved to dismiss the action for spoliation of evidence (the Spoliation Motion). Toyota claimed that Rosenbluth had so damaged the truck during the course of his inspection that Toyota was deprived of its right to inspect and test the truck for any evidence of defect and that its ability to defend the action was severely prejudiced.

On April 22, 1993, the trial court conducted an <u>ore</u> <u>tenus</u> hearing on the Spoliation Motion. At the hearing, Toyota's expert, Lee Carr, who had inspected the truck in September 1992, testified he had been "faced with a dilemma" because he could reach "either one of two conclusions." He stated that either (1)

the temperature control cable did not interfere with the throttle cable or (2) "there were other conditions present in [the] truck that [he could not] now evaluate [and] that [he could not] now duplicate that did, in fact, cause the [temperature control] cable to come into contact with the throttle pedal assembly." Carr further stated that "[w]hatever those conditions were . . . [he could not] identify them and most importantly, if they existed, [he] can't now know what caused them to be present."

After the hearing ended, the Gentrys moved for a stay of consideration of the Spoliation Motion to allow testing of the truck by another expert. They also sought permission "to formulate and serve complete supplemental and amendatory responses to discovery and . . . to move the Court to reopen the hearing . . . on the [Spoliation Motion] and/or to move for leave to file an amended motion for judgment." By order entered October 12, 1993, the trial court granted the motion.

Thereafter, the Gentrys filed amended interrogatory answers setting forth the anticipated opinions of their new expert, Dr. Melvin K. Richardson. They also moved for leave to file an amended motion for judgment based upon their new expert's findings.

Richardson had inspected the truck in July and November 1993. He concluded that a defect had existed in the design or manufacture of the truck's carburetor. This defect had allowed varnish to accumulate in the "secondary butterfly" valve of the

carburetor, causing the valve to stick in the open position and produce the sudden acceleration. Richardson stated that Rosenbluth's actions had not affected or impaired his ability to determine the nature of the defect. Richardson further stated that Rosenbluth's conclusions about the cause of the sudden acceleration were erroneous.

Carr, Toyota's expert, had examined the carburetor in September 1992 and again in March 1995 and found that the carburetor functioned properly. From the eyewitness' observations, Carr proposed yet a third theory regarding how the accident occurred. He theorized that, in response to some mechanical failure such as a "fuel problem" or an "ignition problem," Iris "push[ed] down on the gas." Then, after the mechanical failure resolved, "the engine . . . suddenly [had] power," causing the truck to "shoot ahead and . . . fishtail." Carr also stated that his inspection of and conclusion about the carburetor had not been affected by anything that Rosenbluth had done.

Toyota renewed its Spoliation Motion, and, on June 8, 1995, the trial court granted the motion and dismissed the action with prejudice. The trial judge stated his reason for granting the motion as follows:

> I think that this case has to be dismissed because Mr. Rosenbluth . . . went in with a hack saw and then destroyed a vehicle . . . and now has proven to be absolutely wrong in his opinion[,] in the way in which he conducted his investigation, [and] in the way in which he destroyed the vehicle and prevented the defendant from properly being able to defend the case.

I think he's responsible for the whole mess which
inured to the detriment of the plaintiff.

We awarded the Gentrys this appeal.

A trial court's imposition of a sanction will not be reversed on appeal unless the court abused its discretion. See Oxenham v. Johnson, 241 Va. 281, 287, 402 S.E.2d 1, 4 (1991) (decided under Code § 8.01-271.1). This, therefore, is the standard we must apply in reviewing the trial court's ruling in the present case.

Courts often impose sanctions when a litigant or his attorney has acted in bad faith. The purpose of such a sanction is to punish the offending party and deter others from acting similarly.

In the present case, the record is clear that neither the Gentrys nor their attorney acted in bad faith, and the trial court so found. The wrongful act was committed by Rosenbluth who acted on his own with neither the consent nor the knowledge of the Gentrys or their attorney. Therefore, the dismissal of the Gentrys' action did not serve to punish Rosenbluth, the offender.

Additionally, Rosenbluth's wrongful act, as deplorable as it was, did not prejudice Toyota. The theory upon which the Gentrys now seek to recover is totally unrelated to the part of the vehicle that Rosenbluth destroyed. Indeed, Carr, Toyota's own expert, testified unequivocally that his inspection of and opinion concerning the carburetor were not affected by what Rosenbluth had done. Therefore, given the lack of prejudice, the

dismissal of the Gentrys' action was too severe a sanction.

For these reasons, we conclude that the trial court abused its discretion in dismissing the Gentrys' action.[2]  Accordingly, we will reverse the trial court's judgment and remand the case for further proceedings.

Reversed and remanded.

JUSTICE COMPTON, with whom CHIEF JUSTICE CARRICO and JUSTICE LACY join, dissenting.


In my opinion, the trial court did not abuse its discretion in dismissing this action.

Toyota was entitled to examine the allegedly defective vehicle in its post-accident condition to determine the cause of any malfunction that may have occurred.  This examination was rendered impossible due to the intentional destruction by the plaintiffs' representative of an integral part of the truck.

The fact that the plaintiffs have now focused on an alleged

_____

[2]Toyota also contends that the Gentrys should be prohibited from relying upon Richardson's theory about the cause of the accident.  Toyota asserts that the Gentrys are estopped from advancing this new theory because of the principle that a party cannot assume inconsistent and mutually contradictory positions.  Toyota relies upon Burch v. Grace Street Bldg. Corp., 168 Va. 329, 191 S.E. 672 (1937), and its progeny.
    The estoppel principle is sound, but it does not apply in the present case.  The Gentrys are not attempting to change their position about facts within their firsthand knowledge.  Instead, they seek to present opinion evidence of an expert that differs from that of another expert.  Additionally, discovery depositions and answers to interrogatories generally are not conclusively binding upon a party.  TransiLift Equipment, Ltd. v. Cunningham, 234 Va. 84, 93, 360 S.E.2d 183, 188 (1987).  Therefore, we reject Toyota's estoppel contention.

- 6 -

defect not involving the portion of the vehicle removed with a hacksaw by the plaintiffs' representative is irrelevant on the issue of prejudice. The manufacturer should not be relegated to merely rebutting some recent theory advanced by the plaintiffs regarding the accident's cause. Toyota has the right to determine whether there is some cause of the accident related to the now nonexistent part removed by the plaintiffs. The majority has completely disregarded that right to the prejudice of the manufacturer.

I would affirm the judgment of the trial court.